Mr. Feldman. Mr. Chief Justice, and may it please the Court, a denial of confirmation of a bankruptcy plan is appealable as a right under 28 U.S.C. Section 158, the bankruptcy-specific provision that deals with appeals in bankruptcy cases as opposed to other civil cases. That is because the denial of confirmation finally determines the debtor's right to the disposition of property under Section 158. If you have a plan with a certain amount of money and future income that's provided for in the plan that was denied, how often when you have a plan denied is there typically a question of, okay, well, try again? The judge says, I don't like this part of it. You address it and fix it. In other words, you try again or maybe a third time until you get it okay, now it's perfect. Let's go ahead. I would say very frequently that occurs. I'm sorry, very frequently. Well, if it occurs very frequently, why does it make sense to allow an appeal from the first denial? Why not wait until why isn't it preceding the consideration of whether to confirm the plan and you wait until it's all done and the judge says, I'm not going to do this, I'm done, rather than if you go through three versions of the plan, under your theory, you would have the right to appeal each one? Well, you would have the right to appeal each one. I don't think anybody would ever do it. There are many, many incentives for debtors, especially in Chapter 13, to not go ahead with appeals, but they want to get a plan confirmed and move on with their lives, and they don't have the money or the time or anything else to go through appeals of every issue. The importance of this is not for your other versions. Sotomayor, that may be because they never thought they had the right to appeal. Because it's very easy to get an interlocutory ruling if there's no reason for it to happen. But I think it's very easy to get an interlocutory ruling if the rejection of the plan is on a legal question. I still don't understand why you didn't go that route. Actually, we did go that route. Yeah. And the circuit said, you already filed your appeal, so we don't have to. The bankruptcy appellate panel said, for a reason that I don't understand, that they just didn't want to certify it to the court of appeals. They did certify it to themselves. Is it only the debtor who can appeal the rejection of a plan? I think our view would be, yes, it's only the debtor. It's only the proponent of the plan. In a Chapter 11, after the period of exclusivity, it could be a creditor who proposed the plan. And what we say for 13 would apply to 11 as well, I assume. I think as a general matter, that's probably correct. This is a 13 case and not an 11 case, but I think as a generally, the question in both cases would be what is the nature of the proceeding. And it's similar but not identical in both cases. So it would turn on how. In 11, you would have some well-heeled litigants who would appeal two or three times. Actually, I think it's unlikely in 11 also. The debtor in 11 is somebody who usually wants to get to have a huge incentive to get the company, or trying to reorganize the company, and they're trying to get this company through the 11 process. It's very hard to operate in a Chapter 11. They're trying to get it through as quickly as possible, and taking an appeal is just an impediment to that. Scalia. But what about the other side? You say the other side could appeal. The creditors also actually want their money. They usually want the plan, want a plan to go into effect. The kinds of appeals in both 11 and especially in 13 that are going to happen is not where the Court says, well, you know, if you give another $5 a week out of your project, you have to devote your whole projected disposable income to the plan in 13. If you give another $5 a week, I would approve it. Debtors are going to, all of those are going to be modified and they're going to go through like that. It's only in the important cases where this is a possibility? Yes, but it's cases that are important to the debtor. Well, if it's an important case, then the avenues that are provided, the multiple avenues that are provided for an interlocutory appeal would seem to be satisfying. I don't think that's right. The question, interlocutory appeal serves a fundamentally different purpose than appeal as of right. Interlocutory appeal is generally for the benefit of the system in systematically important cases. But we rely on the parties for issues that are important to them, and they also help with the development of the law to have appeal as of right. The debtor may feel that their house is, in fact, the debtor's house frequently is at stake. I would say most or a majority or a lot of Chapter 13 cases. And if they don't, we use the house. Sotomayor, I don't understand what would be the purpose of all those alternative interlocutory appeal if we accept your argument that in every contested matter a decision is final. We haven't argued that every contested matter would result in a right to appeal. It would depend on what the contested matter is. But the point of those is just the kinds of you look up, the kinds of things that have been certified for interlocutory appeals. There's discovery disputes in bankruptcy cases that have gone to interlocutory appeals that nobody thinks would be appealable as of right. There's denials of motions to dismiss the case that nobody thinks is appealable as of right, but the courts have taken on interlocutory appeals. Attorney disqualification. Kennedy, we interpreted the statute to say that there's jurisdiction here to appeal some final judgments and final orders. Do you see – is your case still just as strong? Is this, in your view, a final order? Yes, it's a final order because it finally determined the debtor's rights to the disposition of property and future income that's provided for in the plan. That's now settled and it's not going to be litigated again. Well, the first thing the judge said is that I want you to file an amended plan in a month. That's what I understood. Right. At least the judge didn't think it was done and over. No, the judge thought for this plan it was over. I think everybody agrees that the judge thought that this debtor can't get what the debtor wanted in this plan. He can't get this treatment. And maybe the way you look at it is whether the proceeding is the confirmation or denial of this plan, or if the proceeding is whether to confirm or deny a plan. Right? Yes, yes, that's right. And the point is that the denial of this plan kept the debtor from getting this particular relief that he wanted, and that is finished and not going to be litigated again. If the debtor had wanted to file a new plan to try and satisfy the judge's concerns, would he have had to file a new action with a new number? No, it wouldn't have had to be a new. Then why is it a final order? That's what I'm wondering. Well, because in bankruptcy, you know, there are many, many appeals that are allowed in bankruptcy, including appeals of priority among creditors that don't complete And are these all final orders? Yes. They don't complete the whole bankruptcy case. The point in bankruptcy, and Congress enshrined this in Section 158, is you look at it proceeding by proceeding, and the question is when the proceeding ends. And the only way to give the debtor an effective right to appeal at all really is to allow the debtor to complete it. Why, why, why doesn't the debtor just say, judge says, debtor, I don't like your plan, I'm not confirming it, but if you amend it in this way, that way, or the other way, then I'll probably confirm it. Right. And then the debtor says, I don't want to amend it that way, okay, I'm not doing it, no amendment filed, then what happens? Then I think the Court probably dismissed the clause. Fine. And then the debtor has an appeal. Right, but so here's the problem. If you require the debtor, so the debtor here has been denied the right to the hybrid treatment of his mortgage that he wanted in the plan.  And then the court has a right to appeal that. The debtor and other creditors lose the right to the automatic stay. Oh, I have a good idea. What we do is we do there the same as any other case. We say, I appreciate your staying this, so I don't lose the advantage while I have an opportunity to appeal. And if the bankruptcy doesn't do it, we ask the appellate panel to do it. That comes up every day in the week. It comes up in criminal cases, civil cases, all the time. Right. But at that point, at that point, the debtor's burden in showing that they're   So I think we have to view that as a similar. Breyer. Does he have a good reason or not? He does have a good reason. Okay. Then he'll get it. But, well, you make mistakes sometimes, by the way. Yes. But it seems to me that to guard against a potential mistake, to potentially have appeals, potentially anyway, none of us knows, in dozens of cases, and then you say contested matters. There are all kinds of contested matters. So we'll have to invent a new set of distinctions about which contested matters do count as final and which ones don't. That seems to me to be throwing a very giant baby out with a bath. Your Honor, we're not arguing that all contested matters should be appealable. We're arguing that denials or planned confirmation are just And they're the only ones. No, but And then But fee matters are not. No, but All the contested matters. But I have a list of about 47 contested matters here that Collier has, and it seemed to me I couldn't figure out. Maybe that's my failing, but I couldn't figure out what, under your rule, which contested matters were and which were not. It's a given, isn't it, that the confirmation of a plan, confirmation of a plan, can be appealed? Yes. Confirmation of a plan can be appealed. And I thought your argument was that this is just the flip side. You can confirm or you can deny. Creditors can appeal if it's confirmed. That's right. So you're defining the contest as yes or no to this plan. Right. And the very same issue would be at issue if had the Court confirmed it, as would be at issue in this appeal of the denial. I didn't see that, because I thought when a court confirms a plan, then there is nothing left to do but execute the plan. So obviously what you have to do is give an appeal or the plan will be executed, the wages will be garnished. You'll be paying forever. But when you deny the plan, nothing more will happen, and therefore there is appeal. Now, that's what I thought the way it worked. Actually, I didn't see why you give an additional set of appeals when only an amendment is at stake. But I guess the issue of amendment, the question is what is a proceeding, not what is a contested matter. And everybody agrees that you can have proceedings that are smaller than the bankruptcy case, and the question is whether this is one of them or not. Now, the fact that the Court granted leave to amend is really equivalent in a normal or similar in a normal civil case to a court denying without prejudice. It means, yes, debtor, you can come back with another plan. You are permitted to do that. That starts a new proceeding. At that point, the debtor files the plan, the creditor objects, you have whatever litigation you need over that plan. The judge holds a hearing, just like he held a hearing before, and ultimately the judge decides whether to grant or deny confirmation. And that is, that looks like a proceeding. It has a beginning and a middle and an end and follows a series of steps and comes to a conclusion on that. The fact that in a civil, in a normal civil case, of course, when a judge denies with leave to a court, dismisses a complaint with leave to amend frequently  does that, you are operating under 1291 where you are not looking for what a proceeding is. Maybe in a normal civil case that would be seen as a proceeding, but that's not the question that you ask. But that is the question that you ask here. As far as stays, courts are reluctant to – it's one thing – a debtor gets an automatic stay when they file their bankruptcy petition. Courts have looked, view an attempt to get a stay of a dismissal. They generally judge those under the standards for a preliminary injunction, which is not easy to meet. You are going to the judge. Kagan. Does that mean that they would have to say that there is a likelihood that their own ruling is wrong? Yes. Yes, it does. And they are very reluctant to do that. The automatic stay is a very powerful and important thing. But the important thing is that people Because if Justice Breyer were right that that's a possibility, you would think that that would be a very good way to solve this problem. But you are just saying that the automatic stays are going to disappear. Yes. On most of these debtors. And also the debtor – I would say also that if the debtor – there's actually four different disabilities that a debtor would have if the case is dismissed. But one of the most important parts of it is it's not just the debtor who gets harmed by that. It's other credit – if the debtor doesn't get the automatic stay, other creditors are going to also have problems because they will start grabbing property and the whole point of the bankruptcy could be lost while the appeal is going. Am I – am I correct in my recollection that your brief says that some jurisdictions have adopted the principle that you're urging and the sky has not fallen? That's right. The Fifth Circuit – the Third, Fourth, and Fifth Circuits have all adopted rules that are similar to what we're proposing here. It might happen on the other side. You actually – we haven't found any case where in one of the other six circuits where a debtor has sought a stay – let me get this right – where a debtor has got a dismissal and sought to extend the automatic stay so he can take an appeal of a dismissal. They all lose their houses or something in the interim? That's – that is what happens. Do we know that? Actually, I don't know what. I mean, that's a pretty – I mean, you know, I realize judges are difficult, but it seems to me somebody was going to lose his house because he wouldn't grant a stay where he has a – some kind of an issue on appeal. That's a pretty appealing case for issuing that stay. I think courts have a rather hard-hearted if they don't have a – Courts have kind of uniform – I think have uniformly applied the standard that you have to show a likelihood of success, not a possibility of success, but a likelihood of success, which is very hard to show once you've just been denied – once the Court has just dismissed the case. There's no lose-your-house exception to that? Not that I know of. But there's three other things. I agree there's some merit to your appeal. There's – Are we then turning this on whether there's some – you want to give a lot of appeals with no merit? I don't think you will. In the Fifth Circuit that's had this rule since 2000, we found three cases, I think, on the court of appeals, three other cases in the district court. Since then, the cases don't come that way. Reported cases or any cases? I beg your pardon? Reported cases or any cases? All the cases we were able to find on Westlaw, which involved reported and unreported. It didn't involve all cases, no. The – How much time, Mr. Feldman, would be involved? So nothing is going to go on while this issue goes up on appeal. That's – it's actually – that's only kind of true. In a Chapter 13 case, the debtor has to start making payments as soon as they – the plan is proposed, which is in about 30 days or so of the time that the petition is filed. And the debtor makes payments usually for three to five years. So I would say in virtually every case and probably every case, while the appeal is going on, the debtor is still making the payments under the plan. It is true the money isn't dispersed to the creditor until after there's an ultimate confirmation. But meanwhile, as I think you just heard in the other case, the trustee is supposed to invest the money in an interest-bearing account. Those proceeds will eventually go to the creditor. So things are – in a Chapter 13 case are going on in the course of the appeal. Ginsburg. Something about your claim, the yes, you can amend, but as I understood, your claim is the answer you've been given is never. You cannot have a hybrid. Yes. That is what that – this plan – You could never amend to make the little change here or there, you just can't have it at all. And those cases which involve issues that are really of importance are of importance to the debtor and perhaps important to the whole bankruptcy system, are the ones that are going to be appealed and that won't ever be appealed if you don't allow an appeal at this stage. And I think as shown by the presence of the United States and Bank of America, both of which I think are probably among the largest creditors in the country and probably participate as creditors in more bankruptcy cases than anyone else, on our side of the case, this – allowing an appeal at this stage is important  for allowing bankruptcy – appellate courts to develop and harmonize the law in bankruptcy, which is a need that many observers have noted. And it won't do any undue harm to creditors because, especially in a Chapter 13 case, the creditor is – the debtor is continuing to pay. And in any case, the cases that are going to be appealed are not the ones where you can negotiate a small difference. Parties have incentives, especially debtors, to get these cases. Sotomayor, my problem still remains, you have multiple ways of getting an interlocutory appeal. You can go to the bankruptcy court, you can go to the back court, you can go to the district court, and you can even ask the court of appeals to grant one. You do. So you have four levels of protection in the event that a one court, like the one you applied to, says no to an interlocutory appeal. I would just say that those are designed for the exceptional case as with or use, not for classes of cases like denials of – denials of confirmation where the debtor, if something is important to the house – But if you have a novel issue of law like this one, you had all of those avenues. Right, but – and we didn't actually get the certification. And it's also a burden on the courts of appeals and on the various courts to deal with all of the certification. It adds an additional level of overhead. Well, that's probably because there aren't that many denials that are based on novel issues of law. It's – but it can be based on the debtors losing their house. If I could reserve the balance. Thank you, counsel. Mr. Tripp, welcome. Mr. Chief Justice, and may it please the Court to just pick up on a couple of the questions. In the circumstance after there has already been a dismissal of the case, it's in – this is in our brief at page 28. The courts treat that as an affirmative injunction, right, because that's an injunction against collection efforts by third parties that would need to be put in place. That's an extraordinary remedy, and we're not available at any circumstance in which that has been granted. And then the second piece, just to pick up quickly on the safety vows, we just want to – two points about that. One is, we're not asking for – this is not a case like Mohawk where we're asking for an exception to the ordinary rule of finality because it's really important to take an ordinary – an appeal soon. What we're saying is we want to apply the ordinary rule as written, because the order here ended a discrete dispute, and so there's – there's an appeal by right under the court. Roberts. That just begs the question. Is – if the discrete dispute is the confirmation of this particular plan, yes. If the discrete dispute is consideration of the plan that is going to be part of the bankruptcy, then what you just said is wrong. Right. And I think that's absolutely the nub of the case, is trying to determine whether this is a discrete dispute. And so it's not about whether it's substantive rights or procedural. It's really – it's whether it's discrete. And I think the path we suggest in our brief, which is drawn from the Collier Treatise, is really by far the clearest way of getting at this. So what we say is, first, you just recognize that a bankruptcy case consists of adversary proceedings and contested matters, and then you just apply ordinary principles of finality to those contested matters. And that will tell you three things. It will tell you that there's – so it will tell you that any order that did not end the adversary proceeding or contested matter, you know that's not final and that could only be taken up as an interlocutory appeal. You know that it's ended a dispute because there's been a dispute. And then you know that it's at least formally distinct, right, because you have this formally distinct adversary proceeding or contested matter. But it's based on the intuition. But see, if I could just follow up. Roberts. Roberts. If you're going to talk about the formality, the bankruptcy judge who doesn't want to be appealed, and I assume most of them don't, simply has to say, you know, I think I will probably deny this unless you come back with something and tell me that why this creditor shouldn't get, you know, $200 as opposed to $10. And then, although in substance, it's exactly the same as here, where he says this one's denied, but come back with another one. And yet, I assume you'd have to say there are different results in those two cases. Right. And under Respondent's own rule, if that order comes out the other way, creditors have an absolute right to take that appeal over a $100 difference, over a $1 difference. They can take two levels of appeal straight to the court of appeals, and creditors make that own judgment. And I think if there was a reason to just say that. Roberts, creditors want to get on with it. They want to get paid and out of it. I mean, the problem here is that we're dealing with bankruptcy where speed is of the essence. I mean, you've got dissipating assets and all that. And yet, your creditors aren't terribly interested in delaying things. They want to move forward. And I think neither are debtors. Everybody has a very strong incentive to move on, and I think that's one of the reasons, you know, if there was a serious concern that there was going to be a flood of these I think, frankly, you wouldn't see us supporting Petitioner. You wouldn't see Bank of America supporting Petitioner. You'd expect to see creditor groups supporting Respondent. Breyer. Why isn't there? I mean, just the converse of what's been argued. The debtor is there. There's an automatic stay. He's living in his house every day. He's submitting plans. Let's say the lawyer decides one every three days. They're not dismissed, but they say do it over again. And you'll think this is great. Now, I'll appeal each one, and then I live in my house for 10 years because it takes a long time to resolve that. I'm not saying whether that's good or bad, but I just wonder why apparently that hasn't happened in any of these circuits, and you will explain to me why. Right. I think there's a number of reasons. One is that as soon as you propose a plan under 1326a, within 30 days of that, you need to start making your payments. And if you're not making adequate protection payments to your secured creditors, then it doesn't matter what you're saying with your plan, your entire case can and should be dismissed. And so I think we also ---- Breyer, in other words, they would catch abuses. They would catch abuses. And the other way to catch abuses is not only with respect to secured creditors, but if you propose an absurd plan, then that would be valid grounds for stay relief on behalf of a creditor who is coming in to complain. My example uses absurd plans to make a point, but the point is just as good where the plans are not absurd, but plausible, but there's this, that, and the other thing. They're borderline cases. They do and can take time. You could and might proliferate appeals. So why hasn't that happened? I'm asked that's the question. Why hasn't that happened? I think the number one reason is that nobody in nobody ---- somebody who's bankrupt and is going into Chapter 13 to save their house or their car or their bank account from imminent collection efforts isn't going to spend thousands of dollars that they don't have taking an appeal to fight about what to do with $100. The cases that we're most concerned about here, and this is where Respondent's Rule is really most perverse, the most important cases where it's really dispositive as to whether you're going to be able to save your house, your car, or your bank account, they're saying first you need to dismiss the case and potentially lose your house, your car, or your bank account before you can even take the appeal. Or you ask for an interlocutory appeal. And I think, frankly, just as I was saying before about the interlocutory appeals, we don't think that that's the right way to look at it, because we're not asking for an exception in the other piece. Kagan, would the interlocutory appeal route work? I mean, especially if this Court were to say in an opinion, you know, interlocutory appeals are really good for this exact purpose. Is there anything in the structure of the system, is there anything in the incentives of judges that would prevent them from doing interlocutory appeals? I think a couple of different answers to that. Some of these cases are going to be mixed questions of law and fact, which are going to be difficult to take up in an interlocutory appeal. Creditors already have the right to take up the mixed question cases as of right, however they want to take them. And then I think the other answer is, it's frankly completely backward to think of 158 D as a sort of, as a reason to say you should allow more, more, as a reason to read finality relatively narrowly here, because Congress enacted 158 D to expand the path to appeal beyond that which 158 A already had, because Congress in 2005 was concerned, not that there were too many bankruptcy appeals, but there were too few. Kennedy, I didn't understand the first part of your answer to Justice Kagan. You said, well, there's some cases where the interlocutory appeals won't work because it's partly factual and so forth, but those are the very cases you say there's an automatic right. Your position is there's a right to appeal. You don't even need the interlocutory appeals. It seems to me you're saying that now there are going to be appeals under your view that really shouldn't be taken at all. It seems to me that works against you. No, no, that's not what we're saying. What we're saying is that creditors should have the right to make the judgment of whether it's important enough to them to take the appeal. Sorry, debtors should have that right. Creditors already have that right. When it's a mixed question of law and fact, they can take two levels of appeal. They can take it all the way to the court of appeals. But if on the way up, if a court of appeals rules in favor of the creditor and now the debtor wants to take another appeal, this is exactly the — and the debtor wants to take another appeal, then they're stuck, because on Respondent's The intuition that you're running up against here, Mr. Tripp, and the reason why people are searching to see if there are alternatives to your rule is this idea that you're short-circuiting what ought to be a kind of negotiated outcome. And, you know, what I hear you saying is just no, you're not, because nobody will ever want to short-circuit a negotiated outcome. Is that — is that your argument? Is that your answer? I think in the situations where a negotiated outcome is fairly available, the incentives to reach that are overwhelming. They're very, very, very strong. And I think that's one of the reasons we just haven't seen a flood of appeals, and one of the reasons that both the United States and Bank of America is here for Petitioner, and nobody's come out to support Respondent. And, I mean, I think the other — just to think about the intuition here, a plan order is basically in the nature of an injunction. It's saying that we want to put this thing into effect on the ground, and for more than a century, even in ordinary civil litigation, the rule is that an order granting an injunction or an order denying an injunction is immediately appealable by right, and that you don't need to ask permission in order to take that appeal. Breyer, that's a symmetrical argument, but we're asking a practical argument. I'm not sure I accept the symmetrical argument, but I have to think about it. Well, the practical argument is, imagine you're a bankruptcy judge, and you get a plan, and it's not perfect, and you think, you know, they ought to change this, they ought to change that, they ought to change the other thing, it would be okay. Now, if you say, go change it, go change it, I deny this one, but go change it, well, you'd have to take into account, gee, maybe I'll get an appeal, God, this is going to slow everything down. It's just simpler to say, figure out some way around this. I'm afraid, in other words, that the bankruptcy judges will get confused on your approach. Is there a concern there that the negotiation will be made more difficult? May I ask another question? I'm not sure I understand. Get confused about when the order becomes final? Forget it, forget it, forget it. Thank you, counsel. Mr. Hallward-Driemeier. Mr. Chief Justice, and may it please the Court. I agree with Your Honor's question, Mr. Chief Justice, that confirmation is sort of the central focus of the Chapter 13 proceeding, and in fact, speed is of the essence, and, Justice Kagan, your question is suggesting that it is supposed to be, in many respects, a negotiated process, and suggesting, in creating an opportunity for debtors to take an immediate appeal for two layers, as of right, perhaps multiple times through the confirmation process, would dramatically change that dynamic. Sotomayor, who has the incentive to do that? The incentive is someone like you who has a pure legal question, but they're saying there isn't an incentive to do that in Chapter 13. Well, I think there are incentives. There are both offensive incentives and defensive incentives. Defensive, first, the person who's trying to save their home and thinks that they'll be able to stay there longer if they're able to take multiple appeals, each of which could take two years. Offensively, by taking an appeal, or at least threatening to take an appeal that will delay the process for years, significantly increases the leverage that the debtor has over the creditors in terms of the negotiating. It dramatically shifts the rule. Do you have any history in the circuits that have the rule that you can appeal a right from a denial of a planned proposal? There's not much history to look at here. The Fifth Circuit was the first to suggest that there might be a right to appeal, but they actually held that that was only true where there was no leave to amend. So in our case, it would not have allowed an immediate right of appeal. The Third and Fourth Circuits have adopted the rule relatively recently, since 2005, after Congress amended the statute last, when Congress amended it, all of the courts of appeals that had clearly ruled, had ruled in our way. So we don't have to have a right to appeal. Kagan But 2005, that's, you know, 10 years, and these cases are coming up all the time. And it seems as though you have a good natural experiment that goes on here, and it hasn't really led to the kinds of bad consequences that we're all surmising. I think there are several potential reasons for that. One is none of those circuits have a bankruptcy appellate panel, and there is a general impression, rightly or wrongly, that bankruptcy judges are more debtor-friendly than Article III judges. And so the opportunity to take an immediate appeal as a right to a panel of three other bankruptcy judges may well be more attractive to a debtor than going to an Article III judge who might well be perceived as being even less hospitable than the bankruptcy judge. Kennedy Well, Your Honor, the idea, as you've just argued, that this would give the debtors too much unfair leverage, how does that account for the fact that some of the very major creditors in the country are on the Petitioner's side? Well, Your Honor, I think — I mean, they must not think there's too much leverage. Well, Your Honor, the rule that Congress has adopted about the safety valve, if you will, for getting issues reviewed in the courts of appeals gives the ultimate control of the docket to the court, not the parties. Even if the parties agree that the issue should go to the court of appeals, the court of appeals has to agree to accept it. It's not surprising to me at all. Ginsburg You know why in this case the bankruptcy, whatever you call it, the map, they would not certify an appeal? Well, I think that first they gave a procedural basis, that the debtor had already filed a notice of appeal before they sought leave to appeal, and they cited that. But they also, I think, recognized that at that point four bankruptcy judges had already ruled against the debtor. The First Circuit looked at the — Counsel, just — you were winding up to answer Justice Kennedy's question, and you haven't — you didn't throw the pitch. So what is your answer to his question? About why the Bank of America and the United States are on the other side. Well, I think that a good reason is that they would rather that the control over ability to take an appeal be in the party's hands rather than in the court's hands, which is where Congress put it in terms of the interlocutory appeal avenue. Well, it's already in their hands, isn't it, when it's a confirmation of a plan? Right? It's in their hands, in the party's hands. That's right. Because at this point — They want it to be in the debtor's hands? As the Court held in Espinoza, when a plan is confirmed, it has immediate legal effect, res judicata effect, even. So clearly that is appealable. There is no res judicata effect, or at least it's never been thought that there was, from a deniable plan. So why do they want the debtor to have control of bringing an appeal? That's what I'm asking. Well, if we actually look at — We really don't know. It doesn't make any sense. The Bank of America brief, I have to say, is somewhat surprising to me, because the rationale that they give is that in their case, which is also pending here on a petition for cert, they won in the district court, but that's not good enough for them. They want to force the court of appeals to decide this issue so that they have controlling circuit precedent. What is the — why is it that a debtor can't — a creditor can't appeal? I mean, suppose you had a plan. The proposed plan said, I want to give $200 a month to Smith and $100 to Jones. And the bankruptcy judge said, I'm sorry, I cannot approve that. I want it the other way around. Well, Smith is hurt by what he said. So why can't Smith appeal? Your Honor, I agree. The Petitioner answered the question earlier, suggesting that only the debtor could appeal. If the determination of this Court is that the order denying confirmation with leave to appeal is a final order, it would follow, I would think, that there is res judicata effect of that order, just as Espinoza held, and that not only could a creditor appeal, the creditor must appeal in order to preserve their rights. And when one thinks about this in the how it would apply in the Chapter 11 context, when you don't simply have one plan, at least after the period of exclusivity has expired, but rather multiple plans, the debtor has suggested and the creditors have proposed theirs, it raises very serious questions of what the bankruptcy court is to do. While one plan that's been denied confirmation is up on appeal, we have all these other plans that are pending in the bankruptcy court. Congress envisioned that that was going to be the period of negotiation, that there would be ultimately a consensus plan. In bankruptcy, perhaps above any other circumstance, the right plan is very often not any party's first plan, it's everybody's second plan. And I want to make clear, again, that there are actually three avenues for a debtor whose proposed plan has been denied. The first, as the Court has discussed already, is to seek leave for interlocutory appeal. The ransom case, which has already been discussed earlier today, is an example of that. The question there was whether automobile ownership costs were an allowable expense when the debtor was not making payments on a car. That issue was the plan was denied confirmation on that basis. The bankruptcy court certified it for interlocutory appeal. It came up through the court of appeals all the way to this Court. Kagan. I mean, you have to admit that it's very unpredictable. Some judges will do it, some judges won't. It won't be completely clear when they do it or why they do it. It will just be kind of luck of the draw. And indeed, the amicus briefs complain that Congress's solution to this problem, which was to expand the avenues for interlocutory appeal, are inadequate because the courts aren't giving leave freely enough. That, Your Honors, is not a reason to adopt a rule of finality that puts the power in the parties. Kagan. Well, yes, it is. I mean, we're trying to figure out what's the best alternative of these systems in a world in which we're not particularly limited by text. Well, so it's quite important how the other alternatives work. And if the interlocutory appeal alternative really isn't working because courts aren't using it for these kinds of purposes, then that's an important factor to know about, isn't it? Well, I think that the proper reaction to that would be, as Your Honors' question earlier suggested, to instruct the courts that they should apply it more liberally. That's the way to gauge. The Petitioner says what are the other two? You started off saying there are three. So seeking interlocutory appeal on the edge of my seat, waiting to hear the other two. The second would be to accept dismissal, to say, Your Honor, I don't seek to file an amended plan, seek to permit dismissal, which would have happened two days after. Assume we don't think that's very effective. Okay. That would be with seeking a stay. I think the party could seek an indicative ruling of whether a stay would be granted before choosing that option. And then the third opportunity would be to so-called file the second amended plan, to file a plan that would get confirmed and then take an appeal from that on the ground. But you can see why that doesn't seem very good from anybody's point of view, including the system's point of view, right? You're going to file a plan that you don't like, that you don't want to live under, just in order to get an appeal right where you can come in and say, really, what we want you to review is three months ago when we had a different plan. Well, I think what's important is that it's not your preferred plan as the debtor, but it's not that you wouldn't be willing — it's not better than, for example, dismissal. Here in this case, the debtor chose to take an immediate appeal, but importantly, they moved the bankruptcy court to extend the time to file an amended plan until after the case came back from the court of appeals. This debtor wants to file another plan if the bankruptcy's decision is upheld. And that's because the rule that you just described, it sounds strange to me. So the debtor's first plan is denied, comes up with a second plan. It's still in the second plan, and the judge says, okay, he's in the position of being a winner. I don't know of a situation where somebody who asked for certain relief got it, but can then appeal that relief because there's a relief that would be more favorable. Oh, it happens all the time in civil litigation, Your Honor, because the interlocutory orders merge with the final order. So if the — in typical civil litigation, if the plaintiff believed that they were entitled to multiple damages or they believed that they were entitled to lost profits or some other measure of damages, and instead they were awarded something but lesser a measure of damages. Kagan. Kagan. I take it some courts will do it and some courts won't, but even, let's say, you're right, that all courts will say, okay, now that we're here, I'll go and I'll look back at the plan that you really wanted. I mean, you're — you said, well, it wasn't his first choice plan, but he's accepted it, but maybe he's accepted it just to get the appeal on the other plan. If he's stuck with that latter plan, he's actually going to bag the whole thing and go into Chapter 7 or something. And you're just making people run through hoops and agree to plans that nobody is willing to live under. I actually think it's very unlike — and the facts of this case are, I think, a very good example. The debtor here, the entire premise of the proposed plan is this debtor is entirely capable of making his monthly mortgage payment according to the terms of his mortgage. There are certain other unsecured creditors. And the debtor says, and I'm able to pay monthly $155 on those two. On a — and then there are other creditors who failed to file proofs of claim. Those creditors, which are in the tens of thousands of dollars, they're going to go away if a plan is confirmed, any plan is confirmed. So what this debtor could have done is say, okay, I'm going to keep making the same monthly payments just as I proposed, just as I should under my mortgage, but I'm not going to get to cram down to the bank. I'm not going to get to force them to take a haircut. I'm still going to get to pay off in a very regular way my other unsecured creditors, $155 a month. That will be done in, I think we calculated, about 20 months. That is definitely a preferred plan than anything else, again, because those creditors who failed to file proofs of claim, they're gone. They're in the tens of thousands of dollars of debt. Now, I ask the other side this. I'd like to get your answer, though it's more, I — this is a contested matter. Collier says there are endless contested matters. He lists about 47. Now, when I asked, but does that mean in all those cases where there is an order in a contested matter, there will be an appeal, the answer was no. No, but this case is different because it has a beginning, middle, and end, and it's a discrete proceeding. Is that, in your opinion, the correct test for sifting among contested matters? Are there other contested matters where appeal as if they were final orders is allowed? What is the criteria? Will it, in fact, produce a nightmare? You're going to say yes, but I mean, I'd like to know why. Well, Your Honor, I guess I would start by answering that I don't think that contested matter is the standard. They don't either. Well, the United States did propose that standard, and I think that we've shown that that can't possibly be correct. All right. I think they might now agree. So what is the standard? So we think that the proper question is what is a proceeding pursuant to the Bankruptcy Code, Section 157b2, lists a number of proceedings, one of which is confirmations of plans, which I think is fully consistent with our view that it's confirmation that is the purpose of this, and until you get there, you haven't reached the end, especially when it's denied with leave to amend. Any small factual dispute, any bit, it can be big or small, it can be many, many of them, but the correct test is, is it a discreet proceeding within the larger case? And there's nothing that will help me get more specific than that. Well, I think that they were right about on the standard of what counts as a final order for appeal. I can't – I don't want to put words in your mouth, but I can say there is basic agreement there. Well, I would say that this – there has been in the briefing at least this amount of disagreement between us. We think that the word finality, or final, rather, as used in Section 158, the Bankruptcy Appeal Provision, is the same as final as it's used in 1291 for civil appeals, that the judicial unit is different. It can be a proceeding as opposed to the whole case. But final has been interpreted to mean terminates the judicial unit. The Court is, in a sense, disassociating. It's not, we're done with this one now, okay? They have suggested that final may mean something a little bit broader in bankruptcy, or that the use of the word order instead of decision in bankruptcy may be something different. That argument there, which – and they've invoked this notion of flexible finality – that should send off alarm bells in the Court's mind, because flexible finality is basically the same as a practical construction of finality, which is the clause that spawned the collateral order doctrine, which the Court has spent the last 30 years trying to put back in a box. And that is really the problem here, that unless there is a clear rule, and we think it's the statutory language proceeding, we think Section 157 provides a list of such proceedings, and for these purposes it's confirmation of a claim. Sotomayor, I guess you're – it's still begging the question, because they're saying the proceeding is the confirmation of a plan, and if the confirmation of the plan is a denial, that that ends that proceeding. So you are begging the question. Well, I don't think so, Your Honor, because I think that – I'm drawing the analogy to 1291, I think final means the same thing. And in 1291, if you have a complaint that's dismissed with leave to amend, that's not final. If you have a plan that's denied confirmation with leave to amend, that's not final. If you have a claim, a proof of claim, that is rejected with leave to amend, or a claim of priority that is rejected with leave to amend, that's not final in our view. On their view, I don't know, because they assume that if you had a proof of claim and it was denied with leave to amend, that must be immediately appealable as final, because now the creditor's preferred view of their claim has been rejected. Or maybe their rule is, I don't know, only if the basis of the denial was a rule of law. But I think they rightly understand that you can't have a rule of finality  Well, so, as this Court's precedent instructs, we decide as a category. And as a category, plans are denied multiple times within a bankruptcy, many times for minute, fact-based reasons. And again, the incentive structure that would be created, we've talked so far about Chapter 13 pretty exclusively, but the Petitioner agreed that the rule would likely apply to Chapter 11 as well. Now, in Chapter 11, things are quite different. In Chapter 11, the debtor is often the debtor in possession, is the estate. They're playing with house money. They're spending the creditor's money because the administrative expenses of the estate need the lawyer's fees come off of the estate. So for them to take an appeal on any issue that they can, you know, reasonably claim a legitimate dispute about, and thereby prolong their control over the estate, prolong the date when distributions will be made. And they have resources to do it. And they have the resources to do it. Chapter 13 doesn't. That's right. But the rule is going to be the same. And in Chapter 13, what we've seen, we didn't see the big numbers. We did see over 700 reported, or at least on Westlaw, decisions in appeals that were not subject to the debtors' control over the estate. So an individual debtor who is intent on preserving their ability to stay in the house certainly could take a number of appeals. Again, this case, I think, proves the point. This case started with an objection by the trustee to the fact that this debtor claimed an automobile ownership cost, the same one that was ultimately rejected by the court in ransom. That issue could have been taken up on immediate appeal. The second time they amended, it was because the bank had objected that when they lifted the payments that would be made on the mortgage, they only gave the principal an interest. They weren't going to pay the insurance or the taxes to Estro. That could have been taken all the way up. And then we had the question of a hybrid plan. That's setting aside any other disputes that might have existed about the value of the home, whether Zillow was an appropriate measure. That was an issue of dispute between the parties. Any of those could have given rise to an appeal. And again, there can be a defensive reason for taking an appeal, because the debtor wants to stay in the house, prevent foreclosure, or it could be offensive, because they want those creditors to know that if they want to see their money, they better agree to the debtor's terms. So it's a significant concern, I think. And again, because you're making these determinations on the basis of the category, it's important to remember that even those factual disputes could be. And when we think of, you know, which do we think is more likely, that the debtors are going to exercise restraint, trust the debtors. They won't take appeals when they shouldn't be taken. Or do we trust the courts to apply the rules, very liberal rules for interlocutory review? And to do that wisely. Kagan. Kagan. Kagan. I mean, one of the things that confuses me about this case, quite honestly, is why you don't have more people on your side. In other words, where are the creditors and where were the amicus priest from the creditors who think that your position is important in order to prevent all these appeals that you say are going to ruin the system? Well, without, I hope, being too flippant, when the Bank of America is on the other side, a lot of creditors give pause as to whether they want to be adverse to them on our side. A lot of counsel have concern about whether they should file a brief on our side. But I've already, I think, explained that the Bank of America, in their amicus brief, have explained their reason for wanting to give reviews. Well, you explained a reason why a particular company creditor is on the other side. But, I mean, really, do you think everybody in the world is so intimidated by the Bank of America? Maybe they thought you could handle it on your own. I think, you know, Your Honor, I think it is actually interesting, because here the Court has, and again, I'm borrowing from the Collateral Order Doctrine and other cases, what the Court has stressed is that even though the parties may have an interest in being able to force the court of appeals to decide an issue, the judicial system has its own interest. The courts have their own interest. The courts of appeals have an interest in not being forced to resolve issues before they need to be resolved, because some of those issues are going to go away. If there is an appeal from a later plan that's ultimately confirmed, I would suspect strongly that there will be many disputes along the way that were fallen out, either because they became moot. Breyer, I thought that was the reason, that the O.R. debating about what the incentives are, who's going to take more appeals and who isn't, really has nothing to do with it. What they world they actually face is where nobody takes appeals, period, from denials anyway, and they say the bankruptcy judges are all over the lot in some of this, and they'd like to generate some appeals because they believe that then you would have a more uniform law, it would be easier for the creditors as well as the debtors. And I think that's their basic argument in their brief. It is their argument. And I don't know where to put that in this. Well, I guess I look at this Court's docket and it seems to me that bankruptcy cases are fairly well represented in the appellate courts. I do agree that there are issues on which parties would like to get review, but Congress has considered that very issue. And in the statute, in 2005, at a time when it was effectively 5-0 our way on this issue, the only question was the Fifth Circuit, but again, they had suggested that if leave was given to amend, it would not be final. When Congress looked at it in that context, they didn't change the final order rule, which had been construed by five courts of appeals at that time. What they did was they created a new avenue for interlocutory appeal direct to the court of appeals, precisely to get that kind of guidance. But, but, they gave the power to the court of appeals to decide whether the issue was coming from the Court of Appeals. Breyer, if you were, maybe there's an argument against this, but suppose, for argument's sake, I agree with you on the basic point. It would then seem important to put in the opinion, there is a problem here about there being insufficient appeals to generate law, but there is a mechanism, namely the interlocutory mechanism, which perhaps has been used too sparingly. Now, what do you think of that? I think that would be very wise on the court's part. That was Justice Kagan's point in the initial. Because, and I think we should recall that under Section 158, the first level of review, which is exercised by the district court over interlocutory orders, is really plenary. They can review any interlocutory order of the bankruptcy process. You know, sometimes they even ignore our holdings. You think they're not going to ignore this, this, this piece of advice? Well, Your Honor, I think that this approach is the same one the Court took in Mohawk. In Mohawk, the Court said, no, we're not going to create an appeal as of right to challenge an order to disclose one's attorney-client confidential material, but, but the courts should apply the rules of interlocutory appeal or of mandamus in a way that is transparent to the district court. And did they take our advice? Well, I have not researched that, Your Honor. But to conclude, I think that the critical question is what's the proceeding? And the proceeding as set forth in 157b-2 is confirmation of plans. That is the core purpose of a Chapter 13 or a Chapter 11. Until that happens, there are no legal rights that are affected. That's the difference between denial of claim confirmation with leave to amend and confirmation. One sets rights. Of course it's immediately appealable. Res judicata even under this Court's decision in Espinoza. But denial of plan confirmation with leave to amend, maybe even, as Your Honor suggested earlier, Justice Breyer, suggesting precisely how to amend in order to get it confirmed, that is not immediately appealable. And I don't think that the Court should rely on the self-restraint of the parties to avoid the problems with that problem. Instead, it's proper use of the tools that Congress gave the courts in the 2005 amendments. If there are no further questions, thank you. Roberts, Thank you, counsel. Mr. Feldman, two minutes. Feldman, Thank you. Just one thing, on Section 158a, the plenary, what my friend said was a plenary right of interlocutory review, actually every court that's looked at that has said that it's the same, apply the same standard as under 1292b. But the main point here is that what the debtor is faced with is two very, very difficult roads to actually getting a review of what could be an important legal decision. On the dismissal side, in addition to the problems caused by losing the automatic stay and trying to convince the Court to grant a stay, there's also the disability of if you file within a year, I think, the automatic, if you refile a case, you only get an automatic stay for 30 days. And there's other disabilities that we talk about in our brief. So that is a very hard thing to impose on somebody where the creditor can take an appeal just as of right because they don't like what the confirmed plan said. On the other hand, as far as trying to confirm a later plan, what this forces the debtor into is a situation where a debtor may have to try to figure out and propose a plan that the debtor might even prefer not to be in bankruptcy at all rather than to live under that plan. But yet the only way for the debtor to get the review of the earlier denial of confirmation is to propose some plan that maybe disposes of property in a way that the debtor completely doesn't want, would rather just have given up on the whole thing. Nonetheless, they have to propose the plan, wait for objections, litigate it through, get it confirmed, and then appeal that. And that — those are severe burdens to put on the debtor. Now, every — the reasons why Bank of America and the United States are here, I think, is that there is a need for bankruptcy precedent to be developed. And one problem is that debtors in this situation are not able to get the review of the court of appeals, which is their only way of getting actually to an Article III judge at all. And they're not able to get that. And for those reasons, we ask that the decision of the court of appeals should be reversed. Thank you, counsel. The case is submitted.